IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS A. AYALA COLON SUCRES., INC., <br><br> Plaintiff, <br><br> v. <br><br> YACHT PATH INTERNATIONAL, INC., <br><br> Defendant. | CIVIL NO. 10-1916 (JAG) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

On September 22, 2010, plaintiff Luis A. Ayala-Colón Sucres., Inc., (hereafter "plaintiff Ayala-Colón") filed a complaint for unpaid stevedoring, marine terminal, diving, welding and/or other miscellaneous services rendered to defendant Yacht Path International, Inc., (hereafter "defendant") in regards to the loading of a 112 feet long luxury mega-yacht, the MIRACLE, from the Port of Ponce, Puerto Rico, which was to be transported on a vessel, the CIELO DI TOKYO, to the Mediterranean. The complaint submits defendant owes plaintiff Ayala-Colón the amount of $44,064.50. It therein acknowledged defendant made a partial payment of $15,000.00, but has failed to pay the remaining balance owed of $29,064.50. (Docket No. 1).

On January 11, 2011, the Court entered defendant's default. (Docket No. 8). On January 28, 2011, plaintiff's request for default judgment was referred to this Magistrate Judge for report and recommendation.

On March 16, 2011, a hearing on default was held. Mr. Hernán Ayala-Rubio, Vice-President of Operations in the San Juan Area for plaintiff Ayala-Colón, testified at the

default hearing and identified the documents entered as Exhibits 1, 3, 5-8, which support the amount claimed in the complaint for the services rendered by plaintiff Ayala-Colón to defendant and which has partially remained unpaid, becoming due and collectable.

## FINDINGS OF FACT

Mr. Ayala-Rubio, Vice President of Operations of plaintiff Ayala-Colón in the San Juan area, testified at the default hering. The witness identified and explained in detail the documentary evidence which was submitted as Exhibits 1, 3, 5-8. The amounts claimed and substantiated through Exhibits 1 and 3 refer to the services provided for the loading, documentation, miscellaneous services to include divers and stevedoring,[1] in having the yacht MIRACLE transported to the Mediterranean, as requested by defendant, on board of the marine vessel CIELO DI TOKYO.[2]

The parties had agreed, prior to the filing of the complaint herein, to the above services as shown through the testimony presented, substantiated by the sequence of e-mails between the parties submitted and the Statement of Facts itemizing these services. (Exhibits 3 and 7). The servicing to CIELO DI TOKYO in regards with the transportation of the yacht MIRACLE at the dock and the use of the cranes and rigs were established through the testimony of Mr. Ayala-Rubio and the photographs presented in Exhibit 8.

---

[1] Exhibit 1 refers to invoice for services rendered to the yacht by Ayala-Colon's offices in Ponce, which various items were explained in detail as to the need and concept for same for the total amount of $44,064.50, as claimed in the Complaint.

[2] Although plaintiff had indicated there was no need for a hearing on grounds the amount owed by defendant was a sum certain, the amount could not be determined without an further evidentiary hearing in the absence of any public document to establish the debt. Cases discussing sum certain requirements of Rule55 are few and bar between and a claim is not a sum certain unless there is no doubt as to the amount to which plaintiff is entitled as a result of the defendant's default. Merely requesting a specific amount in the complaint or statement of damages does not fulfill the sum certain requirement. See KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1 (1st Cir. 2003).

Upon prior attempts to collect by plaintiff Ayala-Colón, defendant acknowledged having indeed received the services, which were considered excellent and indicated not contesting that payment was due. (Exhibit 5). Subsequently, defendant provided partial payment in the amount of $15,000.00, which was received by plaintiff. (Exhibit 6).

Thus, it was clearly established that plaintiff rendered services to defendant in the amount of $44,064.50, as claimed in the complaint. This amount was further established through testimonial and documentary evidence. It was also established that defendant made a partial payment towards said debt in the amount of $15,000.00, for which the remaining amount of $29,064.50, is still due.

## LEGAL DISCUSSION

Plaintiff Ayala-Colón has obtained an entry of default pursuant to Federal Rule of Civil Procedure 55(b)(2) against defendant Yacht Path International, Inc.,[3] as to the complaint filed. Default was properly entered after defendant having been properly placed on notice and served with the Complaint were provided and returned a "Waiver of Service" form, which is part of the record and thereafter failed to reply or plead in this case.

**A. Amount Owed for Services Rendered.**

The evidentiary hearing on default was entertained by this Magistrate Judge on March 16, 2011. The evidence presented established the amount claimed in the complaint less a partial payment made by defendant of $15,000.00, as to the initial balance owed of

---

[3] The original pleading of the complaint indicated defendant Yacht Path International, Inc. " was and is a corporation organized and existing under the laws of the State of New York and authorized to do business under the laws of Florida, with an office and principal place of business in 2401 PGA Boulevard, Suite 155, Palm Beach Gardens, Florida, and was and is the owner and/or charterer and/or operator of the motor vessel CIELO DI TOKYO. The Vessel is registered and documented under the laws of Panama." Complaint ¶3.

$44,064.50. Thus, plaintiff Ayala-Colón has submitted the necessary evidence to establish defendant owes plaintiff the amount of $29,064.50, for the outstanding balance for the services rendered.[4]

**B. Amount owed for Attorney's Fees.**

Plaintiff Ayala-Colón requested attorneys' fees and costs in the amount of $8,812.00 and $500.00, respectively. Leave was granted at the hearing for plaintiff to file additional affidavit(s) for attorney's fees and costs which may accrue after the filing of the motion and for any supplementary proceedings which may occur post-judgment. On March 23, 2011, plaintiff submitted the supplemental motion. (Docket No. 16).

As to plaintiff's request for an award of attorney's fees, one must take notice that a court has inherent power to assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly and/or for oppressive reasons. F. D. Rich Co. v. United States Ex Rel Industrial Lumber Co., 417 U.S. 116, 129 (1974); Gradmann & Holler, Gmbh. v. Continental Lines, 679 F.2d 272, 274 (1st Cir. 1982).

Plaintiff has submitted attorney's fees related to this collection effort amounts to a twenty percent (20%) of the amount requested in the complaint, since partial payment required counsel to intervene on behalf of plaintiff. Plaintiff's counsel indicated he had met with his client to discuss the facts, held several conference calls and e-mail correspondence with defendant, performed legal research on maritime matter since the case involved the

---

[4] These services included expenses for mobile cranes to lift the MIRACLE on board CIELO DI TOKYO, previously retaining services of divers to properly attend and fasten the yacht to the cables, as well as welders to ascertain that once loaded the yacht would be safely and securely transported. These services further required retaining stevedores and operators at the dock consonant with local Union representatives to perform the job, as well as required insurance and experts for documentation as to manifest, bill of lading and Custom clearance.

unusual scenario of a vessel being loaded onto another vessel and servicing thus both, and appeared in Court after obtaining a default against defendant. The fees claimed on contingency basis of twenty percent (20%) is considerably lower than the usual thirty three percent (33%) fees allowed by state law to represent clients.

As such, attorney's fees based on the contingency agreement of $8,812.00, seem reasonable.

Plaintiff has also requested prejudgment interest accrued from the time payment was due up until March 16, 2011, and $500.00 for costs. The award of prejudgment interest rests within the sound discretion of the district court. *See* Ameejee Valleejee and Sons v. M/V Victoria U., 661 F.2d 310 (2d Cir. 1981). As a general rule, prejudgment interest should be awarded in admiralty cases, not as a penalty, but as compensation for use of funds to which claimant was rightfully entitled.[5] Absent peculiar circumstances, court should grant prejudgment interest in admiralty case. First Bank & Trust v. Knachel, 999 F.2d 107 (5th Cir. 1993); Ann K Wooster, J.D., *Construction and Application of Maritime Commercial Instruments and Liens Vessel Identification System Act of 1988*, §75 Prejudgment Interest, 173 ALR Fed. 305 (2001). As such, prejudgment interest should be awarded.

In sum, the amounts above requested for attorney's fees, prejudgment interests and costs should be allowed as part of the default judgment against herein defendant Yacht Path International, Inc.

---

[5] Alan R. Gilbert, J.D., *Award of prejudgment interest in admiralty suits*, 34 ALR Fed. 126 (1977).

## C. Maritime Lien for Services Rendered to the MIRACLE.

Plaintiff Ayala-Colón initially requested a declaratory judgment ruling that Ayala-Colón has a lien over both vessels, CIELO DI TOKIO, which procured the services to be provided for the transportation, and over the MIRACLE, which received the servicing, and all the related services rendered thereunder by plaintiff that are object of the default judgment herein discussed.

The Federal Maritime Lien Act, Title 46, United States Code, Sections 31341-31343, grants maritime liens to particular persons based on their relationship to, or service of, a vessel. Maritime lien holders then may have the right to "bring a civil action *in rem* to enforce the lien", for a maritime lien cannot be executed or divested outside of an *in rem* proceeding. Vandewaters v. Mills, 60 U.S. 82, 89, 19 How. 82, 15 L.Ed. 554 (1956); Gilmore & Black, *The Law of Admiralty* ch. IX (2d ed. 1975).

A creditor with a maritime lien, can seek payment even if the person he/she negotiated with has absconded. Purpose of maritime lien is to make readily available to mobile borrower secured credit that is often necessary to ensure that the vessel can obtain basic supplies or services needed for its operation. Among maritime liens of equal rank, later liens have priority. Gowen, Inc. v. F/V Quality One, 244 F.3d 64, 67 (1st Cir. 2001). The overarching goal of a maritime lien is to keep the channels of maritime commerce open-by ensuring that people who service vessels have an efficient way of demanding reimbursement for their labor and are thus willing to perform the services necessary to keep vessels in operation. *See* Payne v. S.S. Tropic Breeze, 423 F.2d 236, 240-41 (1st Cir. 1970); Mullane v. Chambers, 438 F.3d 132 (1st Cir. 2006).

Admiralty law conceives of a vessel as an entity distinct from its owner, so an *in rem* action to enforce a maritime lien is brought against the vessel itself, rather than against the owner. Puerto Rico Ports Authority v. BARGE KATY-B, 427 F.3d 93 (1st Cir. 2005)(statutory presumption in favor of maritime lien is a strong one); Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d 304, 313 (1st Cir. 1997).[6] Courts have long recognized the special needs of persons engaged in maritime commerce, including a justification of the use of *in rem* proceedings to hold the vessel itself as the obligor. *See, e.g.*, Maine Nat. Bank v. F/V Explorer, 833 F.2d 375 (1st Cir. 1987); Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 960-63 (1st Cir.1984); Amstar Corp. v. S/S Alexandros T., 664 F.2d 904, 907-12 (4th Cir.1981).[7]

Adequate notice of action *in rem* against the vessel, that is, that its owner and/or agent or the proper posting notice on the vessel is required before the maritime lien would be executed, but is not required at this stage when all that is resolved is a declaratory judgment that plaintiff Ayala-Colón is entitled to a maritime lien. *See* MacDougalls' Cape Cod Marine Service, Inc. v. One Christina 40' Vessel, 900 F.2d 408 (1st Cir. 1990).[8]

In admiralty law it is presumed that the vessel owner, through a master, agent, or

---

[6] To acquire maritime lien on vessel, person providing necessaries to vessel is not required to allege or prove that credit was given to vessel, but rather, that is assumed to be the case unless proven otherwise, and party disputing existence of lien is required to show that claimant took affirmative actions that manifested clear intention to forego lien. Submission of bill to vessel owner's agent with whom supplier had been dealing, rather than to owner and vessel, does not constitute waiver of maritime lien.

[7] Maritime liens are mostly secret because (ship mortgages aside) there is no registry system for such liens. 2 S. Friedell, *Benedict on Admiralty* §51, at 4-4 7th ed. 2000).

[8] Furthermore, defendant had already waived requirement of service of process, thus waiving all defenses related to personal jurisdiction and its default was properly entered.

personal presence, will maintain reasonable contact with and continuing interest in the status and condition of the vessel. The owner or its representative, is ordinarily in charge of the vessel, and the owner can reasonably be presumed to receive the word. MacDougalls', 900 F.2d at 412.

It is presumed that a person, such as herein defendant, to have authority to procure necessaries for a vessel, which include the owner, the master, a person entrusted with management of the vessel at the port of supply, or an officer or agent appointed. Title 46, United States Code Annotated, Section 31341. Thus, a person providing necessaries to a vessel, such as plaintiff herein, on the order of the owner or a person authorized by the owner is allowed a maritime lien on the vessel and may then bring a civil action *in rem* to enforce said lien. Title 46, United States Code Annotated, Section 31342(a). The evidence submitted at the evidentiary hearing established herein defendant Yacht Path negotiated and obtained on behalf of the MIRACLE the services provided by plaintiff.

Maritime liens could attach even if the vessel owner had not personally contracted for the services performed. Title 46, United States Code, Section 31341(a); S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1482 (11th Cir. 1987). Federal maritime lien is a unique security device serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. Equilease Corp. v. M/V Sampson, 793 F.2d 598, 602 (5th Cir. 1986). Thus, a maritime lien does not depend on the injured party's possession of the vessel, but travels with the vessel wherever it goes,

regardless of into whose hands it may pass, whether or not the lien is recorded. Vandewater, 60 U.S. (19 How.) at 89.

Thus, it was duly established at the evidentiary hearing before this Magistrate Judge the amount owed to plaintiff by the defendant on default for the servicing to both the CIELO DI TOKIO and to the yacht MIRACLE for the benefit of the latter in handling its transportation to the Mediterranean. It was further testified and afforded full credibility on the basis of the testimony and the documentary evidence, defendant herein was entrusted to make these endeavors of the request for services for the benefit of the MIRACLE. As a result thereof, the maritime lien requested as to the vessel MIRACLE seems proper.

Accordingly, it is recommended that the maritime lien requested be allowed as to the M/V MIRACLE.[9]

## CONCLUSION

In view of the foregoing, it is recommended that default judgment be entered against defendant Yacht Path International, Inc. in the amount of $29,064.50, plus prejudgment interest, attorney's fees in the amount of $8,812.00, and cost $500.00, plus interest accrued thereafter.

---

[9] Although plaintiff submits a maritime lien as to both of these vessels may be allowed, it is plaintiff's request that a maritime lien be solely awarded as to the yacht MIRACLE, as requested in the motion for default judgment. (Docket No. 8, p. 4 (c)).

It is further recommended that a maritime lien as to the yacht MIRACLE be allowed for the amount owed for servicing said vessel, not including attorney's fees, since these are not considered necessaries under maritime lien statute.[10]

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Amended Fed. R. Crim P. 59 (b)(2). *See also* Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 29th day of March of 2011.

            **s/CAMILLE L. VELEZ-RIVE**
            **CAMILLE L. VELEZ-RIVE**
            **UNITED STATES MAGISTRATE JUDGE**

---

[10] Bradford Marine, Inc. v. M/V Sea Falcon, 64 F.3d 585 (11th Cir. 1995). Necessaries are those things that allow a vessel to perform its ordinary functions, such as needed repairs to an engine or foodstuffs for a long voyage. Mullane v. Chambers, 438 F.3d 132 (1st Cir. 2006) (discussing Bradford Marine's denial of attorney's fees).